## WOLFF v. CHAPMAN, FOR THE USE, ETC.

1. ABSTRACTS AND BRIEFS—TYPE.

Abstracts and briefs should not be printed in smaller type than small pica, which should be well leaded.

2. APPELLATE PRACTICE—ASSIGNMENT OF ERROR.

Where a part of the charge to the jury is complained of, it should be quoted in the assignment of error.

3. INSTRUCTIONS.

Instructions concerning a state of facts with respect to which there is no evidence should not be given.

4. EVIDENCE—RECEIPTS.

A receipt is open to explanation.

*Appeal from the District Court of Montrose County.*

Mr. HUGO SELIG, for appellant.

Messrs. BLACK & CATLIN, for appellees.

BISSELL, J., delivered the opinion of the court.

Mesker Bros. were dealers in builders' supplies and materials in St. Louis, who furnished sundry ironwork for use on and about a building which was put up for Wolff by Chapman, the contractor, during the year 1891. By the terms of the contract between Wolff and Chapman, the amount to be paid Chapman for his work and the materials which he was to furnish was a little upwards of $12,000. The original contract contained no provision or reference to the time within which the work should be done. A bond or

contract was offered in evidence, which would tend to show an agreement to finish it by a fixed date, subject to sundry penalties. It makes very little difference what the fact may be about it, because the building was accepted by the owner, and occupied by tenants, and there was no dispute between the owner and the contractor with reference to the date of its completion or the penalties which the bond seems to have provided for. After the work was commenced, there was some correspondence between Chapman and the Mesker Bros. with reference to the ironwork. The testimony does not show whether Chapman ordered it, whereby he became the principal debtor, or whether this class of material and work was to be obtained by the owner and paid for by him. It is, however, of very slight consequence to the issue. At all events, Wolff went to St. Louis, picked out the plans and selected the material which was to be used, and the Mesker Bros. subsequently delivered it. Chapman did not pay for it. In 1893, Mesker Bros. brought suit against Chapman in Montrose county and obtained judgment for the value of the stuff furnished, which would indicate an order by him and an agreement on his part to pay. The judgment was not paid, and, in aid of its execution, they sued out garnishment process and served it on Wolff, who answered that he was in no manner indebted to the contractor. An issue was taken on this answer, which was afterwards tried by a jury, who found for the creditors, and judgment was entered against the garnishee for the value of the material. The garnishee prosecutes this appeal to reverse that judgment. His principal error rests on the admission of two depositions taken in St. Louis. To settle this matter it was absolutely necessary to read the entire abstract to determine the relevancy of the testimony and whether error was committed in its admission. The labor has been one of exceeding difficulty. The abstract and argument were printed in brevier type, which is exceedingly difficult to read. This occurs so frequently, we desire to suggest that abstracts and briefs should not be printed in

smaller type than small pica, which should be well leaded. This lightens the labors of the court and facilitates the examination of the record.

The statement indicates a single question, to wit, whether Wolff had paid Chapman what was due him. The depositions were the evidence of two clerks of Mesker Bros., who testified concerning Wolff's statements to them at the time the ironwork was ordered, which, if followed by other competent proof, would tend to show a guaranty on his part to pay the price of the materials. Chapman testified to an indebtedness sufficient to pay this claim. Wolff controverted it, and produced a receipt for $3,000, given in the early winter of 1891, which, if found to be evidence of the payment of that sum, would liquidate whatever was due Chapman on the completion of the building. Both parties gave evidence respecting the circumstances under which the receipt was given; one insisting it was evidence of the payment of all sums of money due Chapman, and the other that it was given as a protection against certain of Chapman's creditors, and that, in truth and in fact, Wolff had never fully paid him for the work.

Under the very liberal practice required by the statute, we do not regard the admission of those depositions as such substantial error as to compel us to reverse the case. *Salazar v. Taylor,* 18 Colo. 538 ; *Welch v. Mayer,* 4 Colo. App. 440.

The controversy was undoubtedly over the state of the account between Wolff and Chapman. The depositions were chiefly to the point that when the iron was purchased, Wolff stated Chapman was not a responsible person, and he would guarantee the payment of the bill. There was no evidence of a novation or of a guaranty, nor did the judgment creditors seek to recover on any such ground. Their case rested solely on their ability to prove that Wolff was indebted to Chapman. Whether he had guaranteed the payment of the bill would naturally have been of slight consequence in the settlement of this dispute. During the progress of the trial, and in the course of Wolff's examination, he was shown

to be a very careful, prudent man, who kept his accounts with great correctness and accuracy, and had very substantial proof of all his business transactions.    To substantiate the receipt which he offered as evidence of the payment of $3,000, the sum specified in it, he testified to the payment to Chapman at various times of this amount of money in currency of various amounts.    He was not able to give the dates, nor the sums of the payments, nor give any very clear, connected account of the items which went to make up the sum total, or of the disbursement of that amount of money in cash. He kept an account in two banks, and up to the time of giving that receipt had made his payments by check on one or the other of the institutions.    The jury evidently did not accept this explanation as true and found against him.    We can see in those depositions some materiality in support of the issue. If it were true Wolff had guaranteed the payment of Chapman's bill, as a prudent business man he certainly would not have disbursed to Chapman the entire sum which might be due him on the completion of the building, and leave himself liable to pay for this ironwork without recourse on anybody but one, who was known to him to be insolvent.    In this aspect the depositions have some bearing, and the court very strictly and carefully limited the consideration and effect which the jury were at liberty to give them.    Under this express limitation, coupled with the fact that there was abundant evidence, if the jury believed Chapman's story, and disbelieved Wolff's, on which they might find Wolff indebted to Chapman in the sum for which they found a verdict against him, we do not feel at liberty to disturb the judgment.    We prefer to accept the verdict of the jury as conclusive so long as we are not compelled to treat this error as a fatal one.

The appellant complains of the court's refusal to give sundry instructions which related chiefly to the force and effect of the receipt which had been referred to, and his refusal to give some instructions concerning the guaranty mentioned in the depositions.    We were under no obligation to exam-

ine the instructions which the court gave, because the part of the charge complained of was not quoted in the assignment of errors. But we looked at the instructions given and those refused, and we are unable to put our finger on an error which permits us to disturb the judgment. Without quoting it, or stating the substance of what was refused, we may say generally, in support of the court's charge, there was no evidence in the case respecting the guaranty which entitled the garnishee to an instruction on the subject. The case was not thus conceived. It was a naked process of garnishment to compel Wolff to pay what the judgment creditor contended was a debt he owed Chapman. The absence of any evidence to show any novation or a guaranty disentitled the appellant to any instruction on the subject. What the court said about the receipt was undoubtedly the law. A receipt is never conclusive or absolute evidence, either against the person who gives it, or in favor of the one who holds it. It is undoubtedly the subject of explanation, and what the court said about it tended to the appellant's benefit rather than to his detriment.

We do not discover in the record or among the assignments any errors which necessitate the reversal of the judgment. The verdict is evidently supported by the testimony, and, since we are at liberty to accept the finding of the jury on the question, we say the judgment is right and should be affirmed, which is accordingly done.

*Affirmed.*